# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

10/1922

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

THREE CELLULAR PHONES, CURRENTLY LOCATED AT 335 WEST THIRD STREET, DAYTON, OHIO

Case No. 3:22-mj-349

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southen_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) | Possession with Intent to Distribute a Controlled Substance. |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

TFO Luas A. Rose, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____Telephone_____ *(specify reliable electronic means)*.

Date: 10/17/2022

City and state: Dayton, OH

Caroline H. Gentry
United States Magistrate Judge
*Printed name and title*

DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THREE CELLULAR PHONES, CURRENTLY LOCATED AT 335 WEST THIRD STREET, DAYTON, OHIO | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, **LUCAS A. ROSE**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I have been employed as a law enforcement officer for the past nine (9) years. I currently serve as a detective with the DPD. I am presently a TFO with the FBI Dayton Resident Office's Safe Streets Task Force (SSTF). As such, I have been sworn under Title 21, United States Code ("U.S.C."), Section 878, to serve as an officer of the United States duly authorized to conduct federal criminal investigations and execute arrests for violations of offenses set forth under Titles 18 and 21 of the U.S.C.

3. I am also a TFO with the DPD's Major Case/Drug Enforcement Unit within the Narcotics Bureau. Since 2017, in my roles with SSTF and DPD, I have almost exclusively concentrated on the investigation of: narcotics-, firearms-, and gang-related criminal cases. During

my law enforcement career, I have been involved in a large number of firearm-related arrests, executions of search warrants resulting in the seizure of large quantities of narcotics and firearms, participated in undercover narcotics purchases, and supervised the activities of police informants who have provided law enforcement authorities valuable and accurate information and assistance that ultimately resulted in undercover narcotics purchases and apprehensions. During the course of my law enforcement career, I have received an extensive amount of formal and informal training in the investigation of drug trafficking and narcotics-related crimes.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched are one (1) pink Apple iPhone cellular phone, one (1) gray Apple iPhone cellular phone, and one (1) BLU cellular phone. Hereinafter referred to as the "**DEVICES**". The **DEVICES** are further described and depicted in Attachment A. The **DEVICES** are currently located at the Dayton Police Department, 335 West Third Street, Dayton, Ohio.

6. The applied-for warrant would authorize the forensic examination of the **DEVICES** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. On or about October 13, 2022, members of the Dayton Police Department, Special Investigations Bureau (SIB) were conducting surveillance in the area of North Gettysburg Avenue and Kammer Avenue. While in the parking lot of 1027 North Gettysburg Avenue, Four Points

Market, I observed a silver Lincoln sedan, Ohio license FQJ2365, with dark window tint enter the parking lot and park next to my unmarked vehicle. I observed a male wearing a black sweatsuit, later identified as **AARON DUAWNE BROWN SR.** (hereinafter referred to as "**BROWN**") exit the driver's seat of the vehicle and begin walking towards the front door. There was also a front seat passenger who exited the vehicle and remained outside of the vehicle for the duration of the investigation. While **BROWN** approached the door, I observed what was apparent to be a handgun in **BROWN'S** right pocket imprinting through his sweatshirt. Once **BROWN** entered the market, I relocated my unmarked vehicle to have a better view of **BROWN** when he exited the market.

8. A short time later, **BROWN** exited the market and began walking towards his vehicle. I had a clear view of **BROWN'S** right pocket and observed the handgun imprinting through his sweatshirt and noted the frame of the handgun was in a downward facing position. The grip of the handgun was visible protruding from **BROWN'S** right pocket.

9. I contacted Detective Jeremy Stewart, who was assisting in the area and driving a marked City of Dayton Police Cruiser and requested he stop **BROWN.** While waiting for Detective Stewart, I observed **BROWN** enter the driver's seat of the vehicle and sit with the driver's door open. Upon Detective Stewart's arrival and activating his emergency lights, I observed **BROWN'S** right shoulder quickly rise and **BROWN** raise from the driver's seat. **BROWN** quickly leaned towards his right appeared to be concealing an object near the driver's seat and the center console area of the vehicle.

10. Due to **BROWN'S** actions, I exited my unmarked vehicle to assist Detective Stewart. I contacted **BROWN** while he was seated in the driver's seat of the vehicle and asked if he had any weapons on him. **BROWN** replied he did not know what I was talking about. Due to **BROWN'S** movements and believing he concealed a handgun, I asked him to exit the vehicle and

3

placed **BROWN** into handcuffs. After securing **BROWN**, from outside of the vehicle, I observed the grip and extended magazine of a Glock semi-automatic handgun wedged between the driver's seat and the center console of the vehicle. I asked **BROWN** if he had a valid driver's license and he advised he did not.

11. After running **BROWN'S** information, Detective Stewart advised me **BROWN** has previous criminal convictions which prohibit him from possessing a firearm. Due to **BROWN** being placed under arrest for having weapons while under disability and not possessing a valid driver's license, an inventory of the vehicle was conducted before being towed. Detective Stewart asked **BROWN** if he had the keys to the vehicle. **BROWN** stated the keys are either on him or in his coat. I attempted to locate the keys on **BROWN'S** person and located one of the **DEVICES** in **BROWN'S** front right pocket. Detective Stewart checked **BROWN'S** coat for the keys and located a clear plastic baggie containing suspected fentanyl, crack-cocaine, and methamphetamine in **BROWN'S** coat pocket. I later viewed the suspected drugs and found they were package for individual sale. From my past experience I immediately recognized the suspected fentanyl, crack-cocaine, and methamphetamine to be the same color and constancy as fentanyl, crack-cocaine, and methamphetamine I have recovered in the past.

12. Due to the suspected fentanyl, crack-cocaine, and methamphetamine, a search of **BROWN'S** vehicle was conducted. In the center console of the vehicle, Detective Stewart located two additional **DEVICES**. These **DEVICES** were believed to have belonged to **BROWN** due to his operation and possession of the vehicle and the front seat passenger being located outside of the vehicle during the investigation. The front seat passenger also did not claim ownership of any of the three **DEVICES**. During **BROWN'S** arrest, I noted these phones continuously rang and it

is common from my experience that individuals trafficking in drugs often have numerous cellular phones.

13. From my training and experience, I know that at the retail level, traffickers often use cellular telephones to arrange transactions with their user-customers, often directing the customer to locations where the trafficker can meet them in a car (sometimes rental cars) and do a quick hand-to-hand exchange. In addition to using texts to arrange a single sale, it is common for traffickers to send text messages to the users informing them of price or the availability of a new supply of drugs (sometimes in a mass text to several people simultaneously). Traffickers commonly store the names and phone number of their user-customers, as well as those involved in the drug trafficking with the trafficker (sometimes under alias or code names). Because cellular phones often have digital cameras built-in to the phone, it is common for traffickers to take pictures of themselves, their associates, proceeds, and other evidence of drug trafficking. Cellular phones can also store photographs sent to the phone electronically. It is common for traffickers to possess multiple phones because they may be transitioning from sales on a particular phone to another phone as a law enforcement countermeasure, and because traffickers may use one phone to talk to customers while using other phones to communicate with a supplier or associate. I am aware that illegal drugs, namely crack-coaine, fentanyl, and methamphetamine are often sold in 1 gram increments. Given the several quantities of different suspected dugs located in **BROWN'S** coat pocket, and the recovery of the **DEVICES**, it appears as though **BROWN** was actively engaging in trug trafficking at the time of the arrest on October 13, 2022.

14. Based on the above facts, I assert there is probable cause to believe that evidence of violations of 21 U.S.C. §§ 841(a)(1) "Possession with intent to distribute controlled substances"

may be found on the **DEVICES**. I request the search warrant to search the **DEVICES** listed in Attachment A for evidence of those violations as set forth in Attachment B.

15. The **DEVICES** are currently stored at the Dayton Police Department, 335 West Third Street, Dayton, Ohio (within the Southern District of Ohio) having lawfully come into DPD's custody after the execution of the arrest warrant. In my training and experience, I know that the **DEVICES** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **DEVICES** first came into the possession of the Dayton Police Department.

## TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments,

6

and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17. Based on my training, experience, and observation of the **DEVICES**, I know that the **DEVICES** have the capability to serve as a cellular telephone and to store electronic data in various forms. In my training and experience, examining data stored on devices of these types can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on a device. This information can sometimes be recovered with forensics tools.

19. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **DEVICES** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **DEVICES** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

8

    d. The process of identifying the exact electronically stored information on a storage medium necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **DEVICES** to human inspection in order to determine whether it is evidence described by the warrant.

21. *Manner of execution.* Because this warrant seeks only permission to examine the **DEVICES** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

22. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **DEVICES** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

LUCAS A. ROSE
TASK FORCE OFFICER
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me on October 18, 2022:

Caroline H. Gentry
United States Magistrate Judge

## ATTACHMENT A

The item to be searched one (1) pink Apple iPhone cellular phone, one (1) gray Apple iPhone cellular phone, and one (1) BLU cellular phone (hereinafter the "**DEVICES**") presently located at the Dayton Police Department, 335 West Third Street, Dayton, Ohio. The **DEVICES** are depicted and described below:

a. Pink Apple iPhone

 

b. Gray Apple iphone.



c. BLU cellular phone



This warrant authorizes the forensic examination of the **DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

3

## ATTACHMENT B

1. All records on the **DEVICES** described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) "Possession with intent to distribute controlled substances" and involving **Aaron Brown**, including:

   a. lists of drug customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs or others involved in the possession or distribution of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information regarding the acquisition, use, or possession of firearms;

   e. any information related to the acquisition of rental cars or cellular phones.

2. Evidence of user attribution showing who used or owned the **DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and

instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.